UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JUAN AURELIO CASTILLO,　　　　)　　No. CV 16-3330-AGR
　　　　　　　　　　　　　　　　)
　　　　　　　Petitioner,　　　　)
　　　　　　　　　　　　　　　　)　　**OPINION AND ORDER ON PETITION**
　　　v.　　　　　　　　　　　　)　　**FOR WRIT OF HABEAS CORPUS (28**
　　　　　　　　　　　　　　　　)　　**U.S.C. § 2254)**
RAYMOND MADDEN, Warden,　　　 )
　　　　　　　　　　　　　　　　)
　　　　　　　Respondent.　　　　)
　　　　　　　　　　　　　　　　)

　　　　For the reasons discussed below, the First Amended Petition for Writ of Habeas

Corpus ("Petition") is denied and dismissed with prejudice.

**I.**

**<u>SUMMARY OF PROCEEDINGS</u>**

　　　　On November 19, 2013, a Los Angeles County jury found Petitioner guilty of

possession for sale of marijuana (Count 1), tetrahydrocannabinol (Count 2) and

methamphetamine (Count 3), and found true firearm enhancements.  (Clerk's Transcript

("CT") at 269-71, Dkt. No. 20-2.)  The jury also found Petitioner guilty of possession of a

firearm by a felon (Count 4) and possession of heroin (Count 5).  (*Id.* at 272-73.)  The

jury found true that Petitioner had a prior conviction for cocaine base for sale.  (*Id.* at

274.)  Petitioner was sentenced to 18 years and 8 months in state prison.  (*Id.* at 306.)

On March 6, 2015, the California Court of Appeal ordered a clerical error in the abstract of judgment corrected and otherwise affirmed the judgment.  (Dkt. No. 20-8.)  On May 13, 2015, the California Supreme Court summarily denied review.  (Dkt. No. 20-10.)

On December 1, 2015, the Superior Court denied a petition for writ of habeas corpus.  (Dkt. No. 20-12.)  On April 7, 2016, the California Court of Appeal denied a habeas petition and request for evidentiary hearing.  (Dkt. No. 20-14.)  On June 8, 2016, the California Supreme Court summarily denied a habeas petition.  (Dkt. No. 20-16.)

On June 24, 2016, Petitioner filed a First Amended Petition for Writ of Habeas Corpus.  Respondent filed an answer and Petitioner filed a reply.

## II.

## **STATEMENT OF FACTS**

The California Court of Appeal set forth the following facts on direct appeal.  To the extent that an evaluation of Petitioner's individual claims depends on an examination of the record, the Court has made an independent evaluation of the record specific to Petitioner's claims.

### *a.    People's evidence*

On January 1, 2013, at approximately 6:00 p.m., Los Angeles County Deputy Sheriff Alejandro Lomeli was on patrol in East Los Angeles.  As he drove his patrol car down Williamson Avenue, Lomeli saw a pedestrian walk past a white van parked on the street.  A person in the van, who was wearing a gray sweater, reached his arm out to the pedestrian.  The men appeared to exchange something.  Lomeli believed the men had conducted a hand-to-hand drug sale.  When Lomeli made eye contact with the pedestrian and began to exist his patrol car, the pedestrian tossed to the ground a small baggie containing methamphetamine.  Lomeli detained the pedestrian.

Lomeli then looked inside the van. Castillo and another man were seated inside, on a bench. A strong odor of fresh marijuana emanated from the van's interior. When Lomeli ordered Castillo out of the van, he noticed a bulge in Castillo's waistband. A pat search revealed that the bulge was a loaded .40-caliber semiautomatic handgun. Lomeli arrested Castillo and the second man. The second man was wearing a gray sweater. A booking search of Castillo revealed a plastic bag of tar heroin in his front pocket, a cellular telephone, and approximately $484 in cash. The second man was in possession of a digital scale, two cellular telephones, and $26 in cash.

Inside the van, deputies discovered over two pounds of marijuana, contained in bags and jars; 173 grams of concentrated cannabis; 84.5 grams of tetrahydrocannabinol; and a large roll of plastic wrap. Inside a light fixture, Lomeli found baggies containing over 14.27 grams of methamphetamine. Lomeli did not find pipes, rolling papers, needles, or a medical marijuana card on Castillo's person or in the van, and Castillo did not appear to be under the influence of any controlled substance. The van was not registered to either Castillo or the second man.

An expert opined that the quantities of the controlled substances in the van indicated they were possessed for sale rather than for personal use. When given a hypothetical based on the facts of the case, the expert opined that the marijuana, tetrahydrocannabinol, concentrated cannabis, methamphetamine, and heroin were possessed for sale.

The parties stipulated that in 2008 Castillo was convicted of possession of a controlled substance for sale.

   *b.*   *Defense evidence*

Carl Lussow, a long-time friend of Castillo's, testified that he was looking out the window of his mother's house and observed the arrests of

Castillo and the other man.  He saw officers enter the van and remove

Castillo and the second man, pat them both down, and place them in patrol

cars.  He did not see an officer recover a gun or anything else from Castillo.

After Castillo was in the patrol car, six or seven officers searched the van.

Approximately 30 minutes after Castillo had been pat searched, one of the

officers searching the van stated, "'I just found a gun.'"

Several latent fingerprints were obtained from the drugs in the van.

None of the latent prints were Castillo's.

Dkt. No. 20-8 at 2-3.

## III.

## __STANDARD OF REVIEW__

A federal court may not grant a petition for writ of habeas corpus by a person in

state custody with respect to any claim that was adjudicated on the merits in state court

unless it (1) "resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of

the United States"; or (2) "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court

proceeding."  28 U.S.C. § 2254(d); *Harrington v. Richter*, 562 U.S. 86, 100 (2011).

"'[C]learly established Federal law' . . . is the governing legal principle or principles

set forth by the Supreme Court at the time the state court rendered its decision."

*Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003); *see Greene v. Fisher*, 565 U.S. 34, 40

(2011) (examining Supreme Court precedent as of the date of the last state court

decision on the merits of the claim).  Clearly established federal law includes only the

holdings, as opposed to the dicta, of Supreme Court decisions.  *White v. Woodall*, 134

S. Ct. 1697, 1702 (2014).

A state court's decision is "contrary to" clearly established Federal law if (1) it

applies a rule that contradicts governing Supreme Court law; or (2) it "'confronts a set of

facts . . . materially indistinguishable'" from a decision of the Supreme Court but reaches a different result. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam) (citation omitted). A state court's decision cannot be contrary to clearly established Federal law if there is a "lack of holdings from" the Supreme Court on a particular issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

Under the "unreasonable application prong" of section 2254(d)(1), a federal court may grant habeas relief "based on the application of a governing legal principle to a set of facts different from those of the case in which the principle was announced." *Andrade*, 538 U.S. at 76; *see also Rompilla v. Beard*, 545 U.S. 374, 380 (2005) ("An 'unreasonable application' occurs when a state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of petitioner's case.") (citation and some quotation marks omitted).

"In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "The state court's application must have been 'objectively unreasonable.'" *Id.* at 520-21 (citation omitted).

"Under § 2254(d), a habeas court must determine what arguments or theories supported or, [in the case of an unexplained denial on the merits], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this [Supreme] Court." *Richter*, 562 U.S. at 102. "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on

factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

In applying these standards, this court looks to the last reasoned state court decision. *Davis v. Grigas*, 443 F.3d 1155, 1158 (9th Cir. 2006). To the extent no such reasoned opinion exists, as when a state court rejected a claim without explanation, this court must conduct an independent review to determine whether the decisions were contrary to, or involved an unreasonable application of, "clearly established" Supreme Court precedent. *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013); *Haney v. Adams*, 641 F.3d 1168, 1171 (9th Cir. 2011). If the state court declined to decide a federal constitutional claim on the merits, this court must consider that claim under a *de novo* standard of review rather than the more deferential "independent review" of unexplained decisions on the merits. *Cone v. Bell*, 556 U.S. 449, 472 (2009); *see also Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004) (standard of *de novo* review applicable to claim state court did not reach on the merits).

**IV.**

**<u>DISCUSSION</u>**

The California Supreme Court summarily denied the grounds raised in the Petition without citations or other indication that it applied procedural default. Petitioner's claims of ineffective assistance of trial and appellate counsel were denied on the merits in both the Superior Court and Court of Appeal. (Dkt. Nos. 20-12, 20-14.) The court conducts an independent review of the record as to those claims. Respondent urges the court to conduct *de novo* of the remaining claims because the Superior Court and Court of Appeal relied upon procedural default. Because Petitioner's remaining claims are without merit under any standard, the court conducts *de novo* review of the remaining claims.

## A.   GROUND ONE:  <u>CREDIBILITY OF ARRESTING OFFICER;</u> <u>PROSECUTORIAL MISCONDUCT; COURT ERRORS</u>

Petitioner raises five subclaims:  (1) his arrest was the product of an unlawful stop by Officer Lomeli without probable cause or without reasonable suspicion; (2) the prosecution committed misconduct by (a) knowingly using false testimony by Officer Lomeli and (b) misstating Lussow's testimony in closing argument; (3) trial counsel was ineffective for failing to prove the second man in the van was not wearing a gray sleeve; (4) the court improperly denied a *Pitchess* motion for Officers Yoshida and Manfree;[1] and (5) the court instructed the jurors to decide the evidence based on the evidence admitted at trial in response to a juror's question as to whether there were fingerprints on the gun.

### 1.   Illegal Arrest

"[I]llegal arrest or detention does not void a subsequent conviction."  *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975); *Frisbie v. Collins*, 342 U.S. 519, 523 (1952) (state not barred from "prosecuting persons wrongfully brought to it by its officers").

Similarly, under California law, a defendant cannot obtain dismissal of a criminal prosecution on the ground that he was illegally arrested.  "It is no defense to a state or federal criminal prosecution that a defendant was illegally arrested or forcibly brought within the jurisdiction of the court."  *People v. Bradford*, 70 Cal. 2d 333, 344 (1969); *see also People v. McGaughran*, 25 Cal. 3d 577, 583 (1979) ("defendant is not immunized from criminal liability simply because he was arrested on a warrant that had been improperly issued or executed"); *In re Walters*, 15 Cal. 3d 738, 753 (1975) ("unlawful arrest is not a bar to trial").  Thus, to the extent Petitioner argues his counsel was

---

[1]  Petitioner argues that the trial court prevented him from calling the two officers as witnesses, but the pages cited are from a transcript of the *Pitchess* hearing.  (Reporter's Transcript ("RT") at A-3, A-4.)  There is nothing indicating the court prevented the defense from calling these witnesses.

deficient for failing to object on this basis, defense counsel cannot be deficient for failing to make a futile objection or motion. *James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994).

### 2. Prosecutorial Misconduct and Ineffective Assistance of Counsel

*Knowing Use of False Testimony; Ineffective Assistance*

The Constitution "protects a defendant against a conviction based on evidence of questionable reliability . . . by affording the defendant means to persuade the jury that the evidence should be discounted as unworthy of credit." *Perry v. New Hampshire*, 565 U.S. 228, 237 (2012). In general, "juries are assigned the task of determining the reliability of the evidence presented at trial." *Id.*

However, "[d]eliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'" *Giglio v. United States*, 405 U.S. 150, 153 (1972) (citation omitted). "[A] conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment" and "[t]he same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (applying same principles when false testimony goes to credibility). A new trial is warranted if the false testimony could in any reasonable likelihood have affected the judgment of the jury. *Giglio*, 405 U.S. at 154.

Petitioner must show that (1) the testimony or evidence was actually false; (2) the prosecution knew or should have known that the testimony was actually false; and (3) the false testimony or evidence was material. *Jones v. Ryan*, 691 F.3d 1093, 1102 (9th Cir. 2012).

Officer Lomeli testified at trial that he was on patrol at about 6:00 p.m. on January 1, 2013 and saw what appeared to be a hand-to-hand drug transaction. (RT at 31-32, Dkt. No. 20-4.) As relevant here, Lomeli saw an arm with a gray sleeve protrude out of a van and hand something to a person on the sidewalk. As Lomeli got out of his car, the person on the sidewalk made eye contact and tossed a baggie with a crystal-like

substance on the ground.  (*Id.* at 32.)  Lomeli picked it up and saw that the crystal-like substance resembled methamphetamine.[2]  (*Id.* at 33.)  As Lomeli approached the van, he smelled a strong odor of marijuana.  (*Id.* at 34.)  Lomeli called for backup.  After backup arrived, Lomeli ordered Petitioner to exit the van.  Lomeli noticed a bulge consistent with a weapon under Petitioner's clothes in his waistband.  Lomeli conducted a pat down search of Petitioner for safety and found a loaded .40-caliber semiautomatic handgun.  (*Id.* at 34-36.)  The second man in the van was wearing a gray sweater similar to the gray sleeve Lomeli saw hand something to the pedestrian.  (*Id.* at 37, 47-48.)

Petitioner argues there is no evidence corroborating Lomeli's testimony that the second man in the van was wearing a gray sleeve or that the pedestrian who tossed the baggie on the ground made eye contact with Lomeli.  The mere absence of corroborating evidence is insufficient to prove falsity or that the prosecutor knew Lomeli's testimony was false.

Petitioner argues that his counsel was ineffective for failing to prove that the second man, Sandoval, was not wearing a gray sleeve.  However, according to the pages Petitioner attaches from the preliminary hearing transcript, Lomeli testified that he did not photograph the sweater when he booked Sandoval and did not book the sweater into evidence.  (CT at 18.)  Sandoval entered a plea prior to trial.  (RT at 3-4.)  Petitioner's speculative argument does not show deficiency on the part of counsel.

Petitioner further argues that Lomeli's testimony that he had a gun was false.  A defense witness, Lussow, testified that he had known Petitioner over 15 years since they were young kids in the fifth grade.  He saw police pat down Petitioner and didn't see police recover anything on him.  After Petitioner and the other man were in the patrol car, one of the officers retrieved a gun from the van and said "I just found a gun."  (*Id.* at

---

[2]  The parties stipulated that the item dropped outside the van contained 0.93 grams of methamphetamine as tested by a senior criminalist with the Los Angeles Sheriff's Department Scientific Services Bureau.  (RT at 56.)

76-78.)  Lussow testified that he looked out the window because he saw officers going through the van.  (*Id.* at 80.)  Petitioner further argues that his fingerprints were not found on the gun.

Conflicting evidence does not by itself establish that the testimony was false or that the prosecutor knew the testimony was false.  *See United States v. Zuno-Arce*, 339 F.3d 886, 890 (9th Cir. 2003).  The defense presented its evidence at trial.  As noted above, "juries are assigned the task of determining the reliability of the evidence presented at trial."  *Perry*, 565 U.S. at 237; *Zuno-Arce*, 339 F.3d at 889-90.

*Closing Argument*

A prosecutor may argue reasonable inferences from evidence in the record in closing argument.  *United States v. Young*, 470 U.S. 1, 8 n.5 (1985).  Determining whether prosecutorial misconduct occurred during closing argument requires an examination of the entire proceedings so the prosecutor's remarks may be placed in proper context.  *Boyde v. California*, 494 U.S. 370, 384-85 (1990).

"The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation omitted); *see Parker v. Matthews*, 567 U.S. 37, 45 (2012).  On habeas review of a state criminal trial, a federal court applies the *Brecht* harmless error standard to prosecutorial misconduct.  *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007).  An error is harmless unless it had a "'substantial and injurious effect or influence in determining the jury's verdict.'"  *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993).

Petitioner argues that the prosecutor misstated the evidence when he referred to Lussow as a childhood friend who had known Petitioner for years.  (RT at 103-04.)  The prosecutor's argument is a reasonable inference from Lussow's testimony that he had known Petitioner for over 15 years since they were young kids in the fifth grade.  (*Id.* at 78.)  Petitioner has not shown misconduct.

### 3. *Pitchess* Motion

On Petitioner's motion under *Pitchess v. Superior Court*, 11 Cal. 3d 531 (1974) prior to trial, the court found good cause for *in camera* review of Lomeli's records related to dishonesty. (RT at A-4; Dkt. No. 20-8 at 13.)

Petitioner argues that the trial court erred in denying the *Pitchess* motion as to Officers Yoshida and Manfree. Petitioner's showing was based on the facts in Lomeli's police report. The court asked whether there was evidence suggesting any officer other than Lomeli was involved. Counsel responded that other officers were involved but "we don't know their specific involvement." (RT at A-3, A-4.)

A claim involving only the application or interpretation of California law is not cognizable on federal habeas review. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62,67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Smith v. Phillips*, 455 U.S. 209, 221 (1982) ("Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension.").

In *Brady v. Maryland*, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963).

A petitioner must show that the evidence was favorable to him, either because it is exculpatory or impeaching; the prosecution suppressed the evidence, willfully or inadvertently; and prejudice. *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999). Evidence is material when there is "'"any reasonable likelihood"'" it could have "'affected the judgment of the jury."'" *Wearry v. Cain*, 136 S. Ct. 1002, 1006 (2016) (citation omitted). He "need not show that he 'more likely than not' would have been acquitted had the new evidence been admitted." *Id.* (citation omitted). "He must show only that the new evidence is sufficient to 'undermine confidence' in the verdict." *Id.* (citation omitted).

1 Once materiality is established, no further harmless error analysis is required. *Kyles v.*
2 *Whitley,* 514 U.S. 419, 435-36 (1995).

3   Officers Yoshida and Manfree did not testify at trial. Petitioner has not shown that
4 any impeachment evidence as to Yoshida or Manfree was favorable to him or any
5 reasonable likelihood it could have affected the judgment of the jury. Speculation is
6 insufficient. *See Runningeagle v. Ryan*, 686 F.3d 758, 769-70 (9th Cir. 2012).

7          **4.      Trial Court's Response to Juror Question**

8   During deliberations, the jury sent out a question: "Were fingerprints on the gun?"
9 (CT at 243.) The court, with no objection from counsel, sent a note back: "There is no
10 evidence whether the gun was fingerprinted or whether identifiable prints were obtained
11 from the gun. Please judge this case based on the evidence admitted at trial." (RT at
12 134; CT at 244.)

13   "The only question . . . is 'whether [a jury] instruction by itself so infected the entire
14 trial that the resulting conviction violates due process.'" *Estelle*, 502 U.S. at 72 (citation
15 omitted); *see Waddington v. Sarausad*, 555 U.S. 179, 191 (2009). In making that
16 determination, "[t]he jury instruction may not be judged in artificial isolation, but must be
17 considered in the context of the instructions as a whole and the trial record." *Id.* (citation
18 and quotation marks omitted). "[I]t must be established not merely that the instruction is
19 undesirable, erroneous, or even 'universally condemned,' but that it violated some
20 [constitutional right].'" *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). "[W]e 'have
21 defined the category of infractions that violate "fundamental fairness" very narrowly.'"
22 *Estelle*, 502 U.S. at 72-73 (quoting from *Dowling v. United States*, 493 U.S. 342, 352
23 (1990)). Instructional error is subject to harmless error analysis. *See Hedgpeth v.*
24 *Pulido*, 555 U.S. 57, 60-61 (2008); *Byrd v. Lewis*, 566 F.3d 855, 866 (9th Cir. 2009).

25   Petitioner argues that the Order for Release of Property for Inspection indicates
26 that the gun was released to a defense fingerprint expert along with the other items. (CT
27 at 227-28.)

28

The court was correct, however, that there was no evidence before the jury that the gun was fingerprinted. Outside the presence of the jury, Petitioner's counsel advised the court that counsel for Sandoval, who was a co-defendant at the time, "had the packages that were recovered fingerprinted by her expert." (RT at 5.) Counsel later advised the court that he intended to call an expert to testify at trial that "there's no fingerprints on any of the packages." (*Id.* at 66.) The prosecutor and counsel agreed to stipulate to that fact. (*Id.*) The jury was told that Petitioner's fingerprints were not found on "the evidence or drugs seized from the van."[3] (*Id.* at 81-82.)

### 5. Conclusion

Ground One and its subclaims do not warrant federal habeas relief even under a *de novo* standard of review. In addition, with respect to the subclaims based on ineffective assistance of counsel, the state court's decision was not contrary to, or an unreasonable application of, clearly established federal law and was not an unreasonable determination of the facts.

### B. GROUND TWO: Motion for Suppression of Evidence

Petitioner argues that the trial court improperly denied his motion for suppression of evidence pursuant to Cal. Penal Code § 1538.5. A claim involving only the application or interpretation of California law is not cognizable on federal habeas review. *See* 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 67-68.

When "the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that the evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976). This doctrine

---

[3] Moreover, Lomeli testified that he rendered the gun safe before placing it in the trunk of his car by releasing the magazine and pulling the slide back to lock it. (RT at 35-36.) Although not asked specifically about the gun, Lomeli testified that he used his bare hands and did not put on gloves when he recovered the drugs from the van. (*Id.* at 51.)

1  remains effective after enactment of the AEDPA.  *Newman v. Wengler*, 790 F.3d 876,
2  878 (9th Cir. 2015).

3        "'The relevant inquiry is whether petitioner had the opportunity to litigate his claim,
4  not whether he did in fact do so or even whether the claim was correctly decided.'"  *Id.* at
5  880 (citation omitted).  The record indicates that Petitioner was given an evidentiary
6  hearing on his motion to suppress evidence.  Defense counsel cross examined Lomeli,
7  called a witness and argued the motion.  The court ruled and gave reasons.  (RT at D-2
8  through D-21.)  No more is required.  "'All *Stone v. Powell* requires is the initial
9  opportunity for a fair hearing.  Such an opportunity for a fair hearing forecloses this
10 court's inquiry, upon habeas corpus petition, into the trial court's subsequent course of
11 action, including whether or not the trial court has made express findings of fact.'"
12 *Newman*, 790 F.3d at 881 (citation omitted).  Petitioner merely re-argues the evidence
13 and the merits of his motion.  Federal habeas relief is not available for his claim.

14        Ground Two does not warrant federal habeas relief.

15   **C.    GROUND THREE:  <u>Motion for Judgment of Acquittal</u>**

16        Petitioner argues that the trial court improperly denied his motion for acquittal
17 under Cal. Penal Code § 1118.1.

18        Petitioner's claim under state law is not cognizable on federal habeas review.  *See*
19 *Lopes v. Campbell*, 408 Fed. Appx. 13, 15 (2010).  Construing Ground Three liberally,
20 Petitioner argues that there was insufficient evidence to support his convictions.  The
21 court therefore construes Ground Three to be based on insufficiency of the evidence.

22        "[T]he Due Process Clause protects the accused against conviction except upon
23 proof beyond a reasonable doubt of every fact necessary to constitute the crime with
24 which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  "[T]he critical inquiry on
25 review of the sufficiency of the evidence to support a criminal conviction must be . . . to
26 determine whether the record evidence could reasonably support a finding of guilt
27 beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  The Court

28

reviews the elements of the crime(s) under state law. *Id.* at 324 n.16. "'[A] reviewing court must consider all of the evidence admitted by the trial court,' regardless whether that evidence was admitted erroneously." *McDaniel v. Brown*, 558 U.S. 120, 131 (2010) (citation omitted); *LaMere v. Slaughter*, 458 F.3d 878, 882 (9th Cir. 2006) (holding habeas court reviews entire record for insufficiency of evidence even when petitioner challenges denial of § 1118.1 motion).

This inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19 (emphasis in original). "A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). A reviewing court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Cavazos*, 565 U.S. at 2 (citation omitted).

To the extent Petitioner re-argues the evidence, "it is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial." *Id.* "[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id.* (quoting *Jackson*, 443 U.S. at 326); *see also Jones v. Wood*, 207 F.3d 557, 563 (9th Cir. 2000) (finding circumstantial evidence sufficient).

"Unlawful possession of a controlled substance for sale requires proof the defendant possessed the contraband with the intent of selling it and with knowledge of

both its presence and illegal character." *People v. Harris*, 83 Cal. App. 4th 371, 374

(2000).  Officer Lomeli testified that he saw what appeared to be a hand-to-hand drug

transaction.  (RT at 31-32.)  Lomeli saw an arm with a gray sleeve protrude out of a van

and hand something to a person on the sidewalk.  As Lomeli got out of his car, the

person on the sidewalk made eye contact and tossed a baggie with a crystal-like

substance on the ground.  (*Id.* at 32.)  Lomeli picked it up and saw that the crystal-like

substance resembled methamphetamine.  (*Id.* at 33.)  As Lomeli approached the van, he

smelled a strong odor of marijuana.  (*Id.* at 34.)  Lomeli called for backup.  After backup

arrived, Lomeli ordered Petitioner to exit the van.  Lomeli noticed a bulge consistent with

a weapon under Petitioner's clothes in his waistband.  Lomeli conducted a pat down

search of Petitioner for safety and found a loaded .40-caliber semiautomatic handgun.

Lomeli placed Petitioner under arrest and took him over to the patrol car.  During the

booking search, Lomeli found in Petitioner's right front pocket a bag of a tar-like

substance that smelled and resembled heroin.  Lomeli also found a cell phone and $484

in cash.  (*Id.* at 34-37.)  The second man in the van was wearing a gray sweater similar

to the gray sleeve Lomeli saw hand something to the pedestrian.  (*Id.* at 37, 47-48.)

During the booking search of the second man, Lomeli found a digital scale commonly

used for drug sales.  (*Id.* at 37-38.)  Lomeli had noticed a large bag with a green leafy

substance resembling marijuana in the van and located other drugs in the van in addition

to packaging materials.  (*Id.* at 37-39, 42-45.)  The parties stipulated to the drug types

and quantities according to expert testing.  (RT at 56.)[4]  Lomeli did not find paraphernalia

for drug use such as pipes, rolling papers or needles.  Petitioner did not appear to be

under the influence.  (*Id.* at 39-41.)  A narcotics expert opined that the drug amounts and

packaging indicated possession for sale.  With larger amounts of drugs, a firearm is

---

[4]  Petitioner argues that the judge made findings as to drug quantity instead of the jury.
Petitioner does not cite anything in the record to support his argument, and the court has
not located any findings by the court as to drug quantity.

commonly used to protect the drugs and cash.  (*Id.* at 63.)  The parties stipulated that Petitioner had a previous conviction for a felony and for possession for sale of a controlled substance.  (*Id.* at 73.)  This evidence was sufficient to support a finding of guilt beyond a reasonable doubt that Petitioner was in possession of drugs for sale, possession of a firearm by a felon, and possession of heroin.

Ground Three does not warrant federal habeas relief.

**D.     GROUND FOUR:  <u>Denial of Counsel of Choice</u>**

Although it is not entirely clear, Petitioner appears to argue that the court denied his counsel of choice by denying Petitioner's motion under *People v. Marsden*, 2 Cal. 3d 118 (1970).[5]  At the hearing on August 30, 2013, Petitioner stated that he felt counsel was "not going to do his due diligence" because counsel kept "bringing up, you know, deals that are being offered to me by the D.A."  (Dkt. No. 11 at 111-12.)  Petitioner felt counsel was not ready to perform his duties to the best of his abilities and asked for a substitution.  Counsel responded that it was his job to tell Petitioner the plea offers he received from the prosecutor, and he was ready, willing and able to represent Petitioner.  (*Id.* at 112.)

The court explained to Petitioner that, every time a prosecutor makes a plea offer, counsel is obligated by law to tell his client because only the client can decide whether to accept or reject each offer.  Counsel is obligated to be truthful with his client, and "the truth sometimes hurts."  Petitioner was facing up to 28 years in state prison, and was represented by one of the best and most hard working lawyers in court.  The court found no conflict of interest and that counsel was doing his job properly.  Petitioner's *Marsden* motion was denied.  (*Id.* at 112-13.)

Contrary to Petitioner's argument, "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them."  *United States v.*

---

[5]  To the extent Petitioner also argues ineffective assistance of counsel, this ground overlaps with Ground Five and is addressed below.

*Gonzalez-Lopez*, 548 U.S. 140, 151 (2006). When a defendant asks the court to discharge his appointed counsel and appoint new counsel, he must show that his appointed counsel actively represented conflicting interests and the trial court has a duty to inquire into the conflicts of interest. *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980); *Plumlee v. Masto*, 512 F.3d 1204, 1210-11 (9th Cir. 2008). Here, the court conducted a hearing at which Petitioner and counsel had an opportunity to address the reasons for Petitioner's concern. The court explained to Petitioner that counsel was obligated to convey the plea offers to him. *See Missouri v. Frye*, 566 U.S. 134, 145 (2012) (holding "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused" such as a lesser sentence, conviction on lesser charges or otherwise). Petitioner has not shown an actual conflict of interest.[6] *See Miller v. Blacketeer*, 525 F.3d 890, 896-97 (9th Cir. 2008); *Stenson v. Lambert*, 504 F.3d 873, 887 (9th Cir. 2007).

Ground Four does not warrant federal habeas relief.

### E.      GROUND FIVE:  Ineffective Assistance of Counsel

To succeed on a claim of ineffective assistance of counsel, Petitioner must demonstrate that his attorney's performance was deficient and that the deficiency prejudiced the defense. *Wiggins*, *supra*, 539 U.S. at 521; *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Petitioner bears the burden of establishing both components. *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000); *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000).

---

[6] Petitioner subsequently rejected the prosecution's offer against his counsel's advice. (Dkt. No. 11 at 115.)   There is no clearly established federal law that such an opinion creates a conflict of interest or division of loyalties. *Stenson*, 504 F.3d at 876-77, 886 (when petitioner and counsel disagreed as to whether trial was winnable, "[w]e can find no clearly established Supreme Court precedent holding that this kind of disagreement amounts to an actual conflict of interest"). Petitioner makes no showing that any actual conflict of interest adversely affected his counsel's performance.

"'Judicial scrutiny of counsel's performance must be highly deferential,' and 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (citation omitted). A petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Knowles*, 466 U.S. at 124 (citation omitted). Strickland "calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Richter*, 562 U.S. at 110.

To establish prejudice, a petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different. This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.' The likelihood of a different result must be substantial, not just conceivable.'" *Richter*, 562 U.S. at 112.

A court need not address both deficiency and prejudice if a petitioner makes an insufficient showing on one. *Strickland*, 466 U.S. at 697. "The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

### 1. Trial Counsel

Petitioner presents a slew of contentions that do not have any merit. Petitioner argues that his trial counsel failed to perfect his appeal and he had to file the notice of appeal himself. (CT at 309.) The California Court of Appeal reasonably found that Petitioner showed no prejudice. (Dkt. No. 20-14.)

Petitioner argues that his counsel unreasonably advised him to accept a plea offer without obtaining *Pitchess* materials for Officers Yoshida and Manfree, and without contacting certain *Pitchess* witnesses. However, as discussed above, counsel filed a motion to obtain *Pitchess* materials and that motion was denied by the court. The reports attached to the Petition indicate multiple efforts by the defense investigator to contact two *Pitchess* witnesses. (Dkt. No. 11 at 116-17.) Petitioner does not identify any additional steps counsel could reasonably have taken to locate those witnesses. Moreover, Petitioner's arguments about the officers or the *Pitchess* witnesses would have testified is pure speculation.

Petitioner complains that his co-defendant Sandoval, who was the second man in the van, entered a plea and was sent "home" on the first day of trial. There is no indication Petitioner's counsel could have prevented Sandoval from accepting a plea. (RT at 4.) Counsel raised a potential chain of custody issue for items that were transmitted from the prosecution to Sandoval's expert and then to Petitioner's expert. (*Id.* at 5.) However, the chain of custody issue did not materialize because the parties stipulated to the defense expert's fingerprint findings. In any event, the court pointed out that, even if the prosecution were to object, Petitioner's counsel could have called Sandoval's expert as a witness on the chain of custody issue. (*Id.*)

Petitioner argues that his counsel had only one day to prepare for trial. However, the record indicates counsel represented Petitioner no later than March 25, 2013, months before trial started on November 13, 2013. (CT at 104; RT at 1.) Petitioner argues that, at trial, counsel failed to prove that Sandoval was not wearing a gray sleeve.

The court has already this issue in connection with Ground One.  Petitioner further argues that his counsel failed to cross examine Lomeli with alleged inconsistencies between his testimony and his police reports.  Petitioner does not identify any such material inconsistencies.  Petitioner argues that counsel failed to object to hearsay and chain of custody in the prosecution expert's testimony.  The pages cited by Petitioner do not contain hearsay or chain of custody issues.  (RT at 61-62, 64.)  Counsel cannot be deficient for failing to make meritless objections.  *Borg*, 24 F.3d at 27.

Petitioner complains that his counsel unreasonably attempted to explain his presence in the van to the jury by arguing that Petitioner could have been there to purchase drugs.  In context, counsel argued to the jury that the prosecution had not shown any connection between Petitioner and the sale of drugs.  Petitioner was not the person wearing the gray sleeve or possessing the digital scale, and his fingerprints were not found on the packages of drugs in the van.  Counsel attempted to answer the obvious question:  "If at all, ladies and gentlemen, you're asking, well, what is Mr. Castillo doing there?"  (RT at 99.)  Counsel reasonably argued that Petitioner's presence in the van was not sufficient to show his involvement in drug sales, as he could have been there to purchase drugs.  Counsel argued that, according to the jury instructions, when there is more than one reasonable interpretation of circumstantial evidence and one reasonable conclusion points to innocence, the jury must accept the reasonable conclusion that points to innocence and vote not guilty.  (RT at 99, 113.) The California Court of Appeal reasonably concluded that Petitioner showed no prejudice.  (Dkt. No. 20-14.)

Petitioner argues that his counsel did not object to the court's failure to instruct the jury that it must find that Petitioner was previously convicted of a felony as one element of the charge of unlawfully possessing a firearm.  Counsel cannot be deficient because the court instructed the jury that the prosecution "must prove" Petitioner "had previously been convicted of a felony."  (RT at 123.)  Moreover, the parties stipulated that Petitioner

had previously been convicted of a felony.  (*Id.* at 73.)  Petitioner cannot show prejudice.  Petitioner further argues that counsel failed to object to the court's response to the jury's notes regarding fingerprints on the gun.  The court has already addressed this allegation in connection with Ground One.

The state court's decision was not contrary to, or an unreasonable application of, clearly established federal law and was not an unreasonable determination of the facts.

## 2.    Appellate Counsel

The *Strickland* test applies to claims of ineffective assistance by appellate counsel.  *See Smith v. Murray,* 477 U.S. 527, 536 (1986); *see also Smith*, 528 U.S. at 285 ("the proper standard for evaluating [a petitioner's] claim that appellate counsel was ineffective . . . is that enunciated in *Strickland*").  The test for deficient performance is the same as for trial counsel.  *Id.* at 285 (petitioner "must first show that his counsel was objectively unreasonable").  To establish prejudice, a petitioner "must show a reasonable probability that, but for his counsel's [error], he would have prevailed on his appeal."  *Id.*  Appointed appellate counsel is not required "to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points."  *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  "[A] per se rule that the client, not the professional advocate, must be allowed to decide what issues are to be pressed . . . seriously undermines the ability of counsel to present the client's case in accord with counsel's professional evaluation."  *Id.*  "There can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review."  *Id.* at 752.

Petitioner argues that appellate counsel had a duty to raise any arguable issue even if not meritorious.  Petitioner is incorrect.  *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (rejecting "'nothing to lose'" standard for ineffective assistance of counsel claims).

Appellate counsel advised Petitioner she could not find support for a claim of ineffective assistance of trial counsel. (Dkt. No. 11 at 61-62.) Petitioner argues she could have raised ineffective assistance based on failure to object to the erroneous instruction on the prosecution's burden of proof. Petitioner does not identify any such erroneous instruction. The court properly instructed that the prosecution had the burden of proving the elements of each crime beyond a reasonable doubt. (RT at 109-10, 112-13, 119, 124-25; *Id.* at 110 ("Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty.").)

Petitioner raises a host of other issues appellate counsel could have raised:

1.     Petitioner argues there was no evidence to support the prosecutor's statement that the evidence will show Lomeli and the pedestrian (Ramirez) made eye contact. However, Lomeli testified to that fact. (RT at 32 ("as soon as I started exiting my vehicle to approach him, he made eye contact with me . . . .").)

2.     Petitioner argues that the prosecutor engaged in improper vouching when he argued, in rebuttal, that a defense witness, Lussow, was not telling the truth and when he urged the jury to find Petitioner guilty. Petitioner has not shown vouching. The prosecutor argued to the jury that Lussow had a bias as a childhood friend who had known Petitioner for years. (*Id.* at 103-04.) As discussed above, a prosecutor may argue reasonable inferences from the record in closing argument. *Young*, 470 U.S. at 8 n.5. A prosecutor may urge the return of a guilty verdict based on the evidence. (RT at 106.) A prosecutor may also argue credibility based on the evidence, which is what the prosecutor did in this case. *See King v. Schriro*, 537 F.3d 1062, 1068-69 (9th Cir. 2008); *Duckett v. Godinez*, 67 F.3d 734, 742 (9th Cir. 1995) ("prosecutor's assertions regarding the relative believability of the state and defense witnesses were not representations of his personal opinion, but inferences drawn from the evidence").

3.     Petitioner argues the prosecutor misused his stipulated prior conviction for possession of a controlled substance for sale. According to the jury instructions, jurors

"may, but are not required to, consider that evidence for the limited purpose of deciding whether or not: the defendant's alleged actions in this case were not the result of mistake or accident; or the defendant's knowledge when he acted in this case. Do not consider this evidence for any other purpose." (RT at 118-19.) That prior conviction could be only "for the limited purpose of assessing the defendant's knowledge and intent regarding the charged crimes. Do not consider this evidence as proof that the defendant committed any of the crimes with which he is currently charged or for any other purpose." (*Id.* at 124.) The prosecutor permissibly referred to these instructions in rebuttal. (*Id.* at 104.) "A jury is presumed to follow its instructions." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

       4.      To the extent Petitioner argues ineffective assistance of trial counsel for failing to object to the alleged prosecutorial misconduct, counsel cannot be deficient for failing to make a meritless objection. *Borg*, 24 F.3d at 27. Moreover, the court instructed the jury that what counsel say in opening statement and closing argument is not evidence. (RT at 110.) The court has addressed Petitioner's remaining contentions in connection with Ground One.

      The California Court of Appeal reasonably found that Petitioner failed to show prejudice. Petitioner has not shown any reasonable probability that he would have prevailed on appeal on any issue he has identified. Ground Five does not warrant federal habeas relief.

## F.    EVIDENTIARY HEARING

      Petitioner's request for an evidentiary hearing is denied. An evidentiary hearing is not required when, as here, issues can be resolved by reference to the state court record. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). As to claims governed by AEDPA, the United States Supreme Court has held that federal habeas review under 28 U.S.C. § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

# V.

## ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that judgment be entered denying the First Amended Petition for Writ of Habeas Corpus and dismissing this action with prejudice.

DATED: October 2, 2017

_____
ALICIA G. ROSENBERG
United States Magistrate Judge